RAY PLUMB, JR., AND JACQUELYN PLUMB, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 25344-89.      Filed December 12, 1991.

*Bruce Locke, Lawrence Sherlock,* and *L. Don Knight,* for the petitioners.
*M. Kathryn Bellis,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for their 1983 taxable year in the amount of $311,657. At the time petitioners filed the petition herein, they resided in Houston, Texas. This case was submitted on a stipulation of facts and exhibits. Petitioners attempted in their 1984 and 1985 returns to make an election under section 172(b)(3)(C) (now 172(b)(3)) of the Code[1] to relinquish the carryback period for only the *regular* net operating losses sustained in those years. The deficiency rests upon the Commissioner's refusal to permit petitioners to carry back the alternative minimum tax net operating losses. The issues for decision may be formulated in terms of (1) whether the section 172(b)(3)(C) election relates to a single carryback period applicable to both the regular tax and the alternative minimum tax, rather than to two carryback periods, so that an effective election thereunder would of necessity preclude any carryback of net operating losses of both types, and (2) whether, if there was only a single carryback period applicable to both types of net operating losses, the attempted limited election here was ineffective, so that petitioners would therefore be entitled, indeed required, to carry back their alternative minimum tax net operating losses but would also be required to carry back their regular net operating losses prior to carrying them forward.

Petitioners timely filed an income tax return for 1983 on which they reported liability for the alternative minimum tax in the amount of $403,862. In 1984, petitioners sustained a net operating loss (NOL) of $544,066 and an alternative minimum tax NOL of $541,343. Petitioners' timely filed tax return for 1984 contained the statement that "Taxpayers elect to forego [sic] the carryback period for the *regular* NOL in accordance with section 172(b)(3)(C) and will carry forward this NOL."

On April 24, 1985, the Commissioner received from petitioners a copy of Form 1045, entitled "Application for Tentative Refund." This form showed the computations

---

[1] All section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

underlying the alternative minimum tax NOL of $541,343 sustained by petitioners in 1984. It also indicated that the carryback of the 1984 alternative minimum tax NOL to 1983 would entitle petitioners to a refund of $108,269 for 1983. There is no dispute that they received a refund in this amount. Petitioners did not seek a refund relating to a carryback of the regular NOL. Instead, they carried this NOL over to 1985 and claimed it as a deduction for that year.

In 1985, petitioners sustained a net operating loss of $1,021,804 and an alternative minimum tax net operating loss of $1,016,940 as indicated by their timely filed income tax return for that year. Their 1985 return contained the statement that "Taxpayers elect to forego [sic] the carryback period for the *regular* NOL in accordance with section 172(b)(3)(C) and will carry forward this NOL to subsequent years." Petitioners applied for a tentative refund of $203,388 based on the carryback of the 1985 alternative minimum tax NOL to their 1983 taxable year. There is no dispute that they received a refund in this amount. Petitioners did not seek a refund relating to a carryback of their regular NOL. Instead, they carried this loss over to 1986 and claimed it as a deduction in that year.[2]

The Commissioner subsequently determined that petitioners' "1984 and 1985 alternative minimum tax net operating losses are not allowed in computation of 1983's alternative minimum tax because elections to relinquish each of the carrybacks were made in accordance with Internal Revenue Code section 172(b)(3)(C)." He therefore determined a deficiency of $311,657 in petitioners' 1983 tax, which was equal to the sum of the two refunds petitioners had previously received in respect of that year. At issue is the effect of petitioners' attempt under section 172(b)(3)(C) to relinquish the entire carryback period with respect to their regular NOL for the taxable year while at the same time preserving the right to carry back the alternative minimum tax NOL for the same year. The case involves the interplay between the section 172 NOL carryback and carryover provisions and

---

[2]On their 1986 tax return, petitioners stated that they "elect to forego [sic] the carryback period for net operating losses in accordance with sec. 172(b)(3)(C) and will carry them forward to subsequent periods." In 1987, petitioners sustained a net operating loss and an alternative minimum tax net operating loss and carried both NOLs back to 1986.

the section 55 alternative minimum tax. In considering the problem, it may be helpful to examine briefly the history of sections 172 and 55.

The deductions for net operating losses were introduced into our revenue law in 1939 for carryovers and in 1942 for carrybacks.[3] These provisions have been amended from time to time, both before and after being incorporated into the 1954 Code as section 172. Among the amendments, both the carryback and carryover periods have been lengthened. As applicable to the taxable period herein, the carryback period was 3 years and the carryover period was 15 years. Sec. 172(b)(1)(A) and (B). Pertinent portions of section 172 as they apply to this taxable period are set forth in the margin.[4]

---

[3]The carryover provisions were brought into the law as sec. 122 of the 1939 Code, shortly after the adoption of that code. Revenue Act of 1939, ch. 247, sec. 211, 53 Stat. 867. The carryback provisions were added in 1942 by an amendment to sec. 122 of the 1939 Code. Revenue Act of 1942, ch. 619, sec. 153, 56 Stat. 847.

[4]SEC. 172. NET OPERATING LOSS DEDUCTION.

(a) DEDUCTION ALLOWED.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.

(b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

(1) YEARS TO WHICH LOSS MAY BE CARRIED.—

(A) Except as provided * * * [in other subparagraphs], a net operating loss for any taxable year shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

(B) * * * Except as provided * * * [in other subparagraphs], a net operating loss for any taxable year ending after December 31, 1975, shall be a net operating loss carryover to each of the 15 taxable years following the taxable year of such loss.

*     *     *     *     *     *     *

(2) AMOUNT OF CARRYBACKS AND CARRYOVERS.—Except as provided in subsection (g), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed—

(A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (5) thereof; and

(B) by determining the amount of the net operating loss deduction—

(i) without regard to the net operating loss for the loss year or for any taxable year thereafter, * * *

and the taxable income so computed shall not be considered to be less than zero. * * *

(3) SPECIAL RULES.—

*     *     *     *     *     *     *

(C) Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date

Section 172(a) grants a net operating loss deduction for a taxable year in an amount equal to the sum of the NOL carryovers and carrybacks to that year. Section 172(b)(2) establishes the manner in which NOLs are carried backward and forward from the year in which they were incurred. In general, the NOL is required to be carried back to the earliest available year of the carryback period, and then (to the extent not absorbed) to be carried over successively to the next year or years all the way through the remainder of the carryback period and the full carryover period until completely absorbed.[5] In terms of the present case, the taxable year is 1983, and we are here concerned with carrybacks to 1983 from 1984 and 1985.

A taxpayer may elect to relinquish the carryback period with respect to the loss sustained in a given year. Sec. 172(b)(3)(C). If the taxpayer so elects, he does not carry back the net operating loss sustained in that year to any year in the carryback period, and no part of such loss is allowed as a deduction in any year in that period. Accordingly, no part of the net operating loss is absorbed by taxable income in the carryback period. The entire NOL is instead carried forward to the earliest year in the carryover period. Sec. 172(b)(2). An election under section 172(b)(3)(C) is irrevocable, and applies to all of the carryback years relating to the loss year for which the election is made. Sec. 172(b)(3)(C).

Section 55 imposes an alternative minimum tax (AMT) on noncorporate taxpayers. It did not come into our law until 1978, when it was added to the Code by the Revenue Act of 1978, Pub. L. 95-600, sec. 421, 92 Stat. 2871. Nothing therein dealt with alternative minimum tax NOLs. It was

(including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that taxable year.

[5]The amount absorbed in each year to which the NOL is carried is not necessarily the amount of the NOL that was used as a deduction in each such year. Sec. 172(b)(2) provides that after being carried to the earliest available year, the portion of the NOL remaining to be "carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior years to which such loss may be carried." Moreover, the "taxable income" for any such prior year is to be computed with certain modifications. Unless we deem it appropriate to be more specific, when we refer to the amount of the NOL as being absorbed in a particular year, we do so for convenience as a shorthand expression for the amount thus extinguished for that year pursuant to sec. 172(b)(2), rather than the amount that was actually used as the NOL deduction or part thereof for that year.

not until 1982 that section 55 was amended to provide for carrybacks and carryovers of alternative minimum tax NOLs. See Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 201, 96 Stat. 411. Pertinent provisions of section 55 as thus amended by TEFRA are set forth in the margin.[6]

As applicable to the taxable period before us, section 55(a) provides that the alternative minimum tax is equal to 20 percent of so much of the "alternative minimum taxable income" as exceeds an exemption amount, less the regular tax for the year. It is at this point that section 55 interacts with section 172, because section 55(b) defines alternative minimum taxable income as adjusted gross income (determined without regard to the section 172 deduction) as modified in several respects, one of which involves the "alternative tax net operating loss deduction."

---

[6]SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAN CORPORATIONS.

(a) TAX IMPOSED.—In the case of a taxpayer other than a corporation, there is imposed (in addition to any other tax imposed by this subtitle) a tax equal to the excess (if any) of—

(1) an amount equal to 20 percent of so much of the alternative minimum taxable income as exceeds the exemption amount, over

(2) the regular tax for the taxable year.

(b) ALTERNATIVE MINIMUM TAXABLE INCOME.—For purposes of this title, the term "alternative minimum taxable income" means the adjusted gross income (determined without regard to the deduction allowed by section 172) of the taxpayer for the taxable year—

(1) reduced by the sum of—

(A) the alternative tax net operating loss deduction, plus

(B) the alternative tax itemized deductions, plus

(C) any amount included in income under section 87 or 667, and

(2) increased by the amount of items of tax preference.

\*        \*        \*        \*        \*        \*        \*

(d) ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.—For purposes of this section—

(1) IN GENERAL.—The term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that in determining the amount of such deduction—

(A) in the case of taxable years beginning after December 31, 1982, section 172(b)(2) shall be applied by substituting "alternative minimum taxable income" for "taxable income" each place it appears, and

(B) the net operating loss (within the meaning of section 172(c)) for any loss year shall be adjusted as provided in paragraph (2).

(2) ADJUSTMENTS TO NET OPERATING LOSS COMPUTATION.—

(A) POST-1982 LOSS YEARS.—In the case of a loss year beginning after December 31, 1982, the net operating loss for such year under section 172(c) shall—

(i) be reduced by the amount of the items of tax preference arising in such year which are taken into account in computing the net operating loss, and

(ii) be computed by taking into account only itemized deductions which are alternative tax itemized deductions for the taxable year and which are otherwise described in section 172(c).

Section 55(d)(1) states that "The term 'alternative tax net operating loss deduction' means the net operating loss deduction allowable for the taxable year under section 172," subject to the exceptions contained in section 55(d)(1)(A) and (B). This definition thus requires that the amount of the alternative minimum tax NOL deduction for a particular taxable year must equal the amount of the regular NOL deduction for that year, except to the extent that subparagraphs (A) and (B) of section 55(d)(1) require a difference between the two amounts. Neither of these provisions, however, states or implies that a separate carryback period exists with respect to the alternative minimum tax NOL. Indeed, subparagraphs (A) and (B) of section 55(d)(1) do not relate in any way to the existence or length of the carryback period, or to the section 172(b)(3)(C) election to relinquish such a period.[7] We find no basis for according different treatment to an alternative minimum tax NOL than to a regular NOL with respect to the election provided by section 172(b)(3)(C). We hold that the general rule contained in section 55(d)(1) requires that an effective election under section 172(b)(3)(C) must apply to both types of net operating losses.

Section 172(b)(3)(C) speaks in terms of "relinquish[ing] the entire carryback period with respect to a net operating loss." It does not mention either a *regular* net operating loss or an *alternative minimum tax* net operating loss. It is concerned simply with relinquishing the entire carryback period, without in any way distinguishing between a regular NOL and an alternative minimum tax NOL. Certainly, nothing in section 172(b)(3)(C) suggests that it provides for *two elections.* The statute deals with but a single carryback period of 3 years. An effective election under section 172(b)(3)(C) must of necessity relate to that carryback period, and would preclude any carryback whether it be the regular NOL or the alternative minimum tax NOL. Had Congress intended to make available *two* elections, with

---

[7]Sec. 55(d)(1)(A) causes alternative minimum tax NOLs to be absorbed by alternative minimum taxable income in the same way that regular NOLs are absorbed by regular taxable income. See *supra* note 5. Sec. 55(d)(1)(B) requires the exclusion of certain deductions and tax preference items from the computation of an alternative minimum tax NOL in order to harmonize the alternative minimum tax NOL deduction with the policies underlying the alternative minimum tax. See S. Rept. 97-494, 110-111 (1982).

such potentially disparate results, one would certainly have expected that it would have explicitly so stated in the 1982 legislation, which for the first time permitted carrybacks and carryovers of alternative minimum tax NOLs. In the absence of any such clear expression of legislative intention in so complex a field, we hold that there is but a single election contemplated by section 172(b)(3)(C), and that an effective election made thereunder must be applicable to both the regular NOL and the alternative minimum tax NOL. To the extent that the taxpayer has attempted to limit the election merely to the regular NOL, the election may be invalid—a matter discussed shortly hereinafter—and not only would the carryback sought by petitioners for their alternative minimum tax NOL be permissible, as they contend, but the regular NOL would also have to be carried back before it could be carried forward.

A statement made in the legislative history of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, confirms our conclusion that only one carryback period exists. The conference report relating to that act stated that "It is clarified that an election under section 172(b)(3)(C) to relinquish the carryback period applies both for regular tax and for minimum tax purposes." H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4), 262. We recognize of course, as contended by petitioners, that this statement could be interpreted differently. Thus, they argue that the statement can be read as an attempt by the conference committee to clarify that the section 172(b)(3)(C) election could be made for the alternative minimum tax NOL as well as the regular NOL. However, in view of the language used by the committee, we think that such interpretation is rather strained. We adhere to our conclusion that the election under section 172(b)(3)(C) governs both types of taxes.

Petitioners rely on the following example contained in the legislative history of TEFRA, S. Rept. 97-494, 111-112 (1982):

if in year one a taxpayer has $20,000 of income and $35,000 of losses, of which $10,000 are preference items, the minimum tax net operating loss for the year is $5,000. Thus, in any subsequent (or prior) year a $5,000 net operating loss deduction will be allowed to reduce income subject to the minimum tax.

Assume that in year two, the taxpayer has $20,000 of minimum taxable income (without regard to the net operating loss deduction) and

$20,000 of preferences. The taxpayer will be allowed to reduce his minimum taxable income to $15,000 by the $5,000 net operating loss deduction. The net operating loss deduction for purposes of the regular tax will not be affected by this computation (i.e. the taxpayer will have a loss carryover of $15,000 from year one to be used under the regular tax in subsequent years).

Petitioners claim that—

This example illustrates the distinctness between the regular NOL and the AMT NOL and the fact that an AMT NOL may be used in one year without affecting the use of the regular NOL in subsequent years. A necessary corollary of this relationship is that an AMT NOL may be carried back to past taxable years while the regular NOL is carried forward to future years.

The quoted example does not support petitioners' contention. The example demonstrates only that alternative minimum tax NOL carrybacks are deducted from and absorbed by alternative minimum taxable income, while regular NOL carrybacks are deducted from and absorbed by taxable income. The example does not refer to the carryback period, or to the election to relinquish such period under section 172(b)(3)(C). It provides no support for petitioners' position that a separate carryback period is provided with respect to an alternative minimum tax NOL.

Having decided that only one net operating loss carryback period existed, and that an election to waive such carryback period would necessarily apply for both regular and alternative minimum tax purposes, it now remains for us to decide whether the actions taken by petitioners constituted an election to waive the carryback period. For the reasons subsequently stated, we hold that petitioners did not make a valid election to waive the carryback period.

Several courts, including this one, have held in various other contexts that a taxpayer who attempts to make an election that is not legally available to him will be treated as having made no election, and accordingly may be allowed to make another election as though the original election had not been made. E.g. *Mamula v. Commissioner,* 346 F.2d 1016 (9th Cir. 1965), revg. 41 T.C. 572 (1964); *Silver Queen Motel v. Commissioner,* 55 T.C. 1101 (1971); *Maid-Rite Steak Co. v. United States,* 643 F. Supp. 1162 (M.D. Pa. 1986). Petitioners here, however, do not seek to make

another election. Instead, they argue, (1) that if we hold that only one carryback period exists for both regular and alternative minimum tax NOLs, then their attempted election under section 172(b)(3)(C) was invalid, and (2) that this invalid election could not have affected their right, indeed their obligation (under section 172(b)(2)), to carry back both regular and alternative minimum tax net operating losses from 1984 and 1985 to 1983 prior to carrying them forward. We agree with petitioners.

Petitioners' 1984 and 1985 tax returns each contained only one statement purporting to be an election. That statement was "Taxpayers elect to forego [sic] the carryback period for the *regular* NOL in accordance with section 172(b)(3)(C) and will carry forward this NOL." The use and underlining of the word "regular" is significant in establishing that petitioners intended to make an election that was unavailable to them. Cf. *Young v. Commissioner,* 783 F.2d 1201, 1206 (5th Cir. 1986), affg. 83 T.C. 831 (1984). Furthermore, shortly after filing their tax returns, they filed requests for tentative refunds relating only to the carryback of their alternative minimum tax net operating losses from 1984 and 1985 to 1983. Such requests were entirely inconsistent with the only permissible elections under section 172(b)(3)(C), which, as we have held above, would have required petitioners to relinquish the carryback period applicable to both types of NOLs.

The Commissioner cites several cases in support of his position, the strongest of which would appear to be an estate tax case, *Rosenfield v. United States,* 156 F. Supp. 780 (E.D. Pa. 1957), affd. per curiam 254 F.2d 940 (3d Cir. 1958). In *Rosenfield,* the attorney for the estate checked the box marked "Yes" in answering the question whether the estate chose to have the alternative valuation date apply for purposes of valuing the assets for estate tax purposes. The attorney mistakenly believed that by making this election, the estate would be allowed to select either the date of death or the alternative valuation date for each asset independently. The estate tax return reflected the attorney's confusion, since some assets were valued as of the date of death, while others were valued as of the alternative valuation date. The District Court held that the estate's

election would be valid in the absence of evidence that the estate did not intend to make the election, despite the fact that the estate tax return reflected an erroneous view of the nature of the election. *Rosenfield v. United States, supra* at 782-783.

While *Rosenfield* may appear to be analogous to this case, it is distinguishable. In this case, the elections for 1984 and 1985 consisted of explicit statements made by petitioners on their returns for those years, and both such statements contained the underlined word "regular." Thus, the very statements by which petitioners attempted to make the section 172(b)(3)(C) election made clear their intent to make a limited election that was unavailable to them. In *Rosenfield*, by contrast, the election was made by checking a "Yes" box rather than a "No" box. The information that revealed the taxpayer's intent to make an unavailable election did not appear in the statement by which the election was made, but only in other parts of the return. The *Rosenfield* court assigned a much greater significance to the fact that the "Yes" box was checked than to the inconsistent treatment of some of the estate's assets on the return, i.e., as though no election had been made. See *Rosenfield v. United States, supra* at 782-783. Here, petitioners made an explicit statement in an attempt to make an election that was not open to them, in contrast to the election made in *Rosenfield* by checking the "Yes" box—an election that was open to the taxpayer.

The Commissioner misplaces his reliance on the legislative intent behind section 6411, which governs, among other things, tentative refunds stemming from net operating loss carrybacks. It may be true, as argued by the Commissioner, that only a cursory inspection of the refund application is possible, given the 90-day period within which the Commissioner must issue or deny the request for a refund. See sec. 6411(b); S. Rept. 1357, 78th Cong., 2d Sess. (1944), 1945 C.B. 580, 582-583; sec. 1.6411-1(a), Income Tax Regs. But the issuance of a refund under section 6411 does not prevent the Commissioner from subsequently determining a deficiency during the period normally allowed under section 6501 et seq. The time limits imposed on the Commissioner by the tentative refund procedure therefore did not interfere

with his ability ultimately to discover that petitioners intended to make an unavailable election. Those time limits are irrelevant here.

Having determined that various other contentions made by the parties do not merit discussion,

*Decision will be entered under Rule 155.*