BRADLEY C. MILLER AND DIANNE M. MILLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7263–93.　　　　　Filed March 20, 1995.

---

*Mark A. Brown* and *David P. Burke,* for petitioners.
*Steve R. Johnson,* for respondent.

GERBER, *Judge:* Respondent determined a deficiency in petitioners' 1984 income tax in the amount of $40,117. After concessions, the issue remaining for our consideration is whether petitioners were entitled to carry their 1985 net operating loss (NOL) and alternative minimum tax net operating loss (AMT NOL) to different tax years, and, if not, whether petitioners' election manifested an intent to achieve an unavailable result and is therefore of no effect (i.e., by their attempting to use the NOL's separately or to waive the carryback period as to only one of the NOL's).

FINDINGS OF FACT[1]

Petitioners, who were at all pertinent times husband and wife, resided in Tampa, Florida, at the time the petition in this case was filed.

Petitioners' certified public accountant (C.P.A.), Robert E. Krusoe, prepared the tax returns at issue in this case. On April 13, 1985, petitioners' original 1984 tax return was filed, showing no tax liability computed by the "regular" method. Their 1984 return did, however, show an alternative minimum tax liability of $45,784. Petitioners paid the AMT liability.

---

[1] The parties' stipulated facts and documents are included by this reference.

For 1985, petitioners reported an NOL of $331,958 and an AMT NOL of $156,014. Petitioners' C.P.A. became aware of an article from the Journal of Taxation stating that "It is unclear whether both a regular NOL and AMT NOL from the same year must be given the same carryover treatment." The article contained the conclusion that "Independent treatment would seem appropriate", and that "it may be possible to carryback a regular NOL and elect to carry forward an AMT NOL even though both NOLs originated in the same year." Stout & Weiss, "Analysis of the alternative minimum tax net operating loss: The second NOL", 61 J. Taxn. 418, 422 (1984).

Mr. Krusoe then consulted an associate of his, former IRS employee Harry "Bud" S. Morrison. Mr. Morrison concluded that the two carryback periods could be split, and reduced his conclusions to writing for Mr. Krusoe. Based on the Journal of Taxation article, Mr. Morrison's comments, and his own research, Mr. Krusoe concluded that NOL and AMT NOL carrybacks and carryovers could be split.

Mr. Krusoe prepared petitioners' 1985 tax return and sent it to them on January 10, 1986. The cover letter informed petitioners that, for 1985, they had sustained a "regular net operating loss of $331,958, which * * * [had] been elected to be carried forward * * * [and] an alternative minimum tax net operating loss of $156,014, which * * * [petitioners, with the assistance of Mr. Krusoe, would] carryback after * * * [the] return * * * [was] filed."

For 1985, petitioners' Federal income tax return reported taxable income (loss) of ($331,958) and alternative minimum taxable income (loss) of ($156,014), and included the following statement:

In accordance with Internal Revenue Code Section 172, the Taxpayers hereby elect to forego the *net operating loss carry back period* and will carryforward the *net operating loss*. [Emphasis added.]

Mr. Krusoe prepared this election statement in accordance with the language in section 172(b)(3),[2] believing that the NOL and AMT NOL from the same year could be split and carried back or forward to different years. He thought that the term "net operating loss" delineated only "regular" NOL's and, thus, that there was no need to mention the AMT NOL. Mr.

---

[2] Section references are to the Internal Revenue Code in effect for the taxable years under consideration. Rule references are to this Court's Rules of Practice and Procedure.

Krusoe believed that, by choosing such language, he would communicate petitioners' intent to waive only their NOL carryback, while separately reserving their AMT NOL carryback for use in a different tax year.

On February 3, 1986, respondent received petitioners' 1984 amended tax return. In the 1984 amended return, petitioners carried back their 1985 AMT NOL, thus reducing their 1984 AMT liability. Consequently, petitioners claimed a refund for $34,372 and included this statement:

The amended return is filed to carryback an alternative minimum taxable net operating loss in accordance with Internal Revenue Code §55(d). AMT NOL computations are on page 5 and first carried back to 1983, on page 6, then to 1984 also on page 6.

In March 1986, respondent returned petitioners' 1984 amended tax return with instructions that additional calculations were needed. In June 1986, petitioners filed both a revised 1984 amended return and a 1985 amended return. Subsequently, in September 1986, respondent refunded the $41,090 that petitioners requested on their revised 1984 amended return.

Legislative commentary was issued on September 18, 1986. A House report contained the comment[3] that "an election under section 172(b)(3)(C) to relinquish the carryback period applies both for regular tax and for minimum tax purposes." H. Conf. Rept. 99–841 (1986), 1986–3 C.B. (Vol. 4) 1, 262. Likewise, in June 1987, respondent, in Rev. Rul. 87–44, 1987–1 C.B. 3, announced the position that the election was indivisible.

On January 6, 1993, respondent sent petitioners a notice of deficiency, arising from the refunded alternative minimum tax.

## OPINION

Individuals are permitted to carry net operating losses from one taxable year to another. Sec. 172(a). An individual's NOL, with certain adjustments, is generally composed of the excess of deductions allowed over gross income. Sec. 172(c). An NOL deduction computed for a particular year can include NOL carryovers and carrybacks from other taxable years. Sec.

---

[3] The comment is not related to any legislation from the 99th Congress.

172(a). Section 172(b) provides for the manner in which NOL's are to be carried back and carried forward. Generally, the entire amount of an NOL is carried back to the earliest year of the carryback period (i.e., 3 years prior), the excess being carried to succeeding years. Any excess NOL is then carried forward (for up to 15 years) until the NOL is depleted.

Taxpayers may elect to waive the carryback of an NOL from a particular tax year. Sec. 172(b)(3)(C). If such an election is made, a taxpayer may only carry the NOL forward, starting with the earliest year in the carry-forward period. A section 172(b)(3)(C) election is irrevocable; it waives the opportunity to carry back the NOL. *Plumb v. Commissioner,* 97 T.C. 632, 636 (1991).

The alternative minimum tax requirements for taxpayers, other than corporations, are set forth in section 55. In 1982, the AMT rules were amended to provide for the carrying back and carrying forward of AMT NOL's.[4] Section 55(d)(1) provides that the "alternative tax net operating loss deduction" should be deducted in arriving at alternative minimum taxable income. In *Plumb v. Commissioner, supra* at 638, we held that

> Section 55(d)(1) states that "The term 'alternative tax net operating loss deduction' means the net operating loss deduction allowable for the taxable year under section 172," subject to the exceptions contained in section 55(d)(1)(A) and (B). This definition thus requires that the amount of the alternative minimum tax NOL deduction for a particular taxable year must equal the amount of the regular NOL deduction for that year, except to the extent that subparagraphs (A) and (B) of section 55(d)(1) require a difference between the two amounts. Neither of these provisions, however, states or implies that a separate carryback period exists with respect to the alternative minimum tax NOL.

Despite the section 55 language and our holding in *Plumb,* petitioners contend that, in 1985, they could have split their NOL by electing to send their NOL's (NOL and AMT NOL) off in different directions. Petitioners sought to carry their NOL forward and their AMT NOL back.

Prior to 1984, separate net operating loss treatment was necessary because a 1983 AMT NOL could not be carried back to a pre-1983 year. Even though pre-1984 AMT NOL's could not be carried back, NOL's computed under the regular

---

[4] See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, sec. 201, 96 Stat. 411.

method could be carried back. See sec. 55(d)(2)(B). Section 55(d)(2)(B), however, does not apply to a 1985 loss. For 1985, petitioners had the option under section 55(d)(1)(A) of carrying back or carrying forward AMT NOL's; the latter could be accomplished only by waiving the carryback period for both AMT and regular NOL's. In *Plumb v. Commissioner, supra,* we held that a "split" election, attempting to forgo a carryback of a regular NOL while retaining a carryback of the AMT NOL was impermissible. We must decide whether the language of petitioners' election impermissibly attempted to split their NOL and AMT NOL into separate tax years.

Both parties rely on *Plumb v. Commissioner, supra.* In *Plumb,* the taxpayers elected to relinquish the carryback period with respect to their 1984 and 1985 NOL's. *Id.* at 633. In that case, we held that

Section 172(b)(3)(C) * * *. * * * does not mention either a *regular* net operating loss or an *alternative minimum tax* net operating loss. It is concerned simply with relinquishing the entire carryback period, without in any way distinguishing between a regular NOL and an alternative minimum tax NOL. [*Id.* at 638.]

Consequently, this Court held that "In the absence of * * * clear expression of legislative intention * * * there is but a single election contemplated by section 172(b)(3)(C)". *Id.* at 639. Thus, any election under this section must apply to both types of NOL's. *Id.*

A 1986 House report contains the commentary that AMT NOL's are to be carried over under a separate, yet parallel, system from that applying to NOL's. H. Conf. Rept. 99–841 (1986), 1986–3 C.B. (Vol. 4) 1, 262. That House report also contained the comment that NOL's could not be split and carried in different directions, whether forward or back. Respondent echoed the same position in Rev. Rul. 87–44, 1987–1 C.B. 3.[5] This ruling provides that an election for any taxable year under section 172(b)(3)(C) to relinquish the carryback period applies to both types of NOL'S.

We recognize that petitioners' carryback election was attempted in 1986, before the 1986 congressional report and the 1987 revenue ruling. Despite petitioners' accountant's belief, our holding in *Plumb v. Commissioner, supra,* confirms that NOL's and AMT NOL's cannot be split and carried

---

[5] Revenue rulings are considered solely as the position of respondent.

in different directions, and that a valid section 172(b)(3)(C) election governs both types of losses.

Petitioners, in turn, argue that if they are not permitted to split their NOL's, then their attempt to do so renders their election invalid. Specifically, petitioners ask that we follow a line of cases referenced in *Plumb v. Commissioner, supra* at 640, holding that "a taxpayer who attempts to make an election that is not legally available to him will be treated as having made no election". We have little doubt that petitioners, at all relevant times, intended to split their NOL's; however, petitioners' subjective intent is not the measure of whether a valid election was made. We must objectively examine petitioners' statement on the 1985 return to decide the manifested intent. *Young v. Commissioner,* 783 F.2d 1201, 1206 (5th Cir. 1986), affg. 83 T.C. 831 (1984). To be valid, an election must be unequivocally manifested to the Commissioner. *Id.* at 1204–1206. One method of unequivocally manifesting an election is to use the words of and/or a reference to the statute granting taxpayers the option to elect.

In *Plumb v. Commissioner, supra* at 633, the taxpayers included the following statement with their 1984 tax return:

"Taxpayers elect to forego [sic] the carryback period for the *regular* NOL in accordance with section 172(b)(3)(C) and will carry forward this NOL."

In *Plumb* we found that the taxpayers did not attempt to waive their AMT NOL carryback; rather, they only attempted to waive their NOL computed by the regular method. Petitioners here did not use the word "regular" in their statement. Petitioners manifested their election to waive the "net operating loss carry back period" and also referenced section 172. Hence, petitioners must show that the use of "net operating loss carry back period" did not unequivocally manifest an election to waive the period for all carrybacks. Petitioners point out that, after using the language "net operating loss carry back period", they used the following language: "and will carryforward the net operating loss". Petitioners argue that the reference to "loss" in the singular indicates that their statement did not involve both NOL's; in other words, that "net operating loss" is synonymous with "regular net operating loss" (as used in *Plumb*).

Petitioners contend that, during the relevant years, the phrase "net operating loss" quite often referred to NOL's computed by the regular method. Petitioners' expert witness, Barton Terry Aidman, has been a C.P.A. since 1970, and he now specializes in taxation. Mr. Aidman understood the term "net operating loss", in early 1986, to mean a "regular net operating loss". He testified that "Most any document you pick up will refer to net operating loss and it will mean the regular net operating loss." He also referred to publications and respondent's materials to illustrate that the term "regular" was not used to denote NOL's computed by the regular method.[6] We do not put much weight on this testimony because it is the expert's subjective point of view based on his personal observations. More importantly, the absence of the term "regular" leaves the more general and all-inclusive category "net operating loss". That category could include any type of net operating loss (e.g., "regular", AMT). Although petitioners' accountant possessed an article which contained the opinion that NOL's could be separately used, it seems clear to us that the statute did not permit waiving carrybacks with respect to only one type of NOL.

We are compelled to hold that the term "net operating loss" objectively and on its face, when considered in the context of the election, does not create ambiguity or show that petitioners attempted to carry forward only NOL's computed by the regular method. The operative language in petitioners' election included the phrase "to forego the net operating loss carry back period". Under the statute, that necessarily would include NOL's and AMT NOL's. To hold otherwise would create confusion and unduly hamper the administration of the return filing process. Respondent would be in the position of having to guess or hypothesize about all possible meanings of taxpayers' elections. Considering the statute (section 172), respondent would have been expected to treat petitioners' election, as manifested, as waiving the carryback period for all of petitioners' NOL's. Petitioners' language unequivocally manifests such an intent and therefore creates a valid election, unlike the taxpayers' language in *Plumb* (attempting to

---

[6] See, e.g., IRS Form 1045 Schedule A, "Computation of Net Operating Loss" (Rev. 11–85), and other Treasury forms that do not use the word "regular" when referring to regular-tax items (e.g., Form 1040, "U.S. Individual Income Tax Return").

waive the NOL carryback period as to their "regular net operating loss").

The Court of Appeals for the Fifth Circuit, citing *Plumb*, recently held that a taxpayer who referred to the wrong section of the Internal Revenue Code when attempting to make a section 172(b)(3)(C) election had not made an election at all. In *Powers v. Commissioner*, 43 F.3d 172, 176 (5th Cir. 1995), affg. in part, revg. in part and remanding 100 T.C. 457 (1993),[7] the taxpayer attached the following statement to his 1978 and 1979 tax returns:

"Pursuant to Section 56(b)(3)(C), Taxpayer elects to carryforward to 1979 the net operating loss of 1978" * * *.

The Court of Appeals for the Fifth Circuit held that, pursuant to the section 172 regulations, a taxpayer must cite the proper Code section (i.e., section 172) when seeking to make the carryback waiver election. The taxpayer in *Powers* referred to section 56 (a minimum tax section) in his election statement. The taxpayer further argued to the court that, although he was not permitted to do so, he thought that he could relinquish the carryback period solely for AMT purposes. The Court of Appeals held that the reference to section 56 instead of section 172 was fatal to the taxpayer's attempted election.

In the instant case, however, the Millers used language that correctly referred to section 172 and triggered their election.

In *Branum v. Commissioner*, 17 F.3d 805 (5th Cir. 1994), affg. T.C. Memo. 1993–8, the taxpayer made the following section 172(b)(3)(C) election on his 1985 tax return:

"Taxpayer, in accordance with I.R.C. section 172(b)(3)(C) hereby elect [sic] to carry foreward [sic] *all losses* sustained in the calendar year 1985 and forego [sic] carry back of such losses to prior years." [*Id.* at 807; emphasis added.]

The taxpayer later sought to repudiate his section 172(b)(3)(C) election because, like the Millers, the *Branum* taxpayer benefited from waiving the carryback only as to his NOL, not his AMT NOL. The Court of Appeals for the Fifth Cir-

---

[7] The Tax Court filed two opinions regarding this taxpayer. The Court of Appeals for the Fifth Circuit reversed the holding in *Powers v. Commissioner*, T.C. Memo. 1986–494, which addressed the taxpayer's NOL election.

cuit held that the phrase "all losses" in the taxpayer's election "[left] no trail of ambiguity". *Id.* at 809. The Court of Appeals indicated that, for an election under section 172(b)(3)(C) to be valid, it must be "unequivocal". *Id.* The court noted that the taxpayer's burden of showing that he did not make an "unequivocal" election is to "cast a shadow of ambiguity over his intent so that, at the very least, it falls short of 'unequivocal'." *Id.* at 809 n.10. In *Branum,* the court held that "all losses" was unequivocal.

Respondent states on brief that petitioners should not be allowed to repudiate their own carefully selected language by showing a "mere shadow of ambiguity". We agree. Insignificant flaws should not allow a taxpayer to revoke an otherwise valid section 172(b)(3)(C) election.[8] Petitioners followed the language of section 172 in making their election. We also note that petitioners are motivated to show that their election is flawed because they would benefit in this unusual situation. Most taxpayers attempt elections in order to obtain some tax benefit. To require the type of precise language inherent in petitioners' argument would serve to poison the well.

Petitioners (or their professional tax advisers) were the authors of their election. Petitioners did not choose words that indicated their intent to split their NOL. Instead, they used the language of the Internal Revenue Code, which does not permit separate use of the NOL's.

In *Carlstedt Associates, Inc. v. Commissioner,* T.C. Memo. 1989–27, a corporate taxpayer provided the following statement with its 1982 tax return:

"IN ACCORDANCE WITH CODE SECTION 172(b) TAXPAYER HEREBY ELECTS TO RELINQUISH THE ENTIRE CARRYBACK PERIOD WITH RESPECT TO THE CURRENT *NET OPERATING LOSS.*" * * * [Emphasis added.]

In *Carlstedt,* we held that, even though the taxpayer failed to sign the above statement, a valid section 172(b)(3)(C) election was made. Petitioners, in the instant case, referred to their NOL by using the same language as that used by the corporate taxpayer in *Carlstedt* (i.e., "net operating loss"). By using the section 172 language verbatim, without any quali-

---

[8] See *Santi v. Commissioner,* T.C. Memo. 1990–137.

fier (i.e., the word "regular"), petitioners in the instant case elected to waive the carryback period for both types of their net operating losses. If their intent was otherwise, the failure of the election to manifest that intent seems to have resulted from an erroneous interpretation of the statute by petitioners and/or their advisers.

In *Santi v. Commissioner*, T.C. Memo. 1990–137, the taxpayers attached a statement to their return indicating that their "'NOL will *be carried over to future years*'" (emphasis added) without reference to "regular tax". The taxpayers sought to invalidate their election in order to carry it back, just as petitioners here seek to do. In *Santi*, we held that the tax return showed that the taxpayers clearly intended to relinquish their NOL carryback and that the election was valid.

*Carlstedt v. Commissioner, supra,* and *Santi v. Commissioner, supra,* dealt with pre-1983 tax years, when AMT NOL's could not be carried back. However, those cases dealt with taxpayers who referred to a "net operating loss" when they drafted their elections. They chose the words and language of section 172(b)(3)(C), which is concerned with the carryback of all NOL's. *Plumb v. Commissioner*, 97 T.C. 632 (1991).

Income tax elections can be demanding and technically difficult to manifest.[9] The election process need not be made more arcane by stretching to find slight potentially invalidating ambiguities—especially when a taxpayer follows the words of the statute.

Petitioners' election statement clearly manifested an intent to make the section 172(b)(3)(c) election and must therefore stand.

To reflect the concessions of the parties,

*Decision will be entered under Rule 155.*

---

[9] See, e.g., *Wong v. Commissioner,* T.C. Memo. 1994–202. Despite the taxpayer's having met other requirements, we held that, because the taxpayer failed to maintain records of his sec. 1244 stock election, pursuant to the Internal Revenue regulations, he was not entitled to ordinary loss treatment upon the stock's worthlessness.