METRO ONE TELECOMMUNICATIONS, INC., PETITIONER
v. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 12651–07.          Filed December 15, 2010.

P claimed an alternative tax net operating loss (ATNOL)
deduction for 2002. P calculated the deduction by taking into
account a carryback of an ATNOL from 2004. The deduction
of the carryback reduced P's alternative minimum taxable
income (AMTI) to zero. *Held*: P's carryback of the ATNOL is
not a "carryover" under sec. 56(d)(1)(A)(ii)(I), I.R.C.; thus, sec.
56(d)(1)(A)(i)(II), I.R.C., precludes P from deducting an
ATNOL that offsets all of P's AMTI.

*Neil D. Kimmelfield*, *Lewis M. Horowitz*, and *John H. Gadon*, for petitioner.
*John D. Davis*, for respondent.

OPINION

PARIS, *Judge*: Petitioner petitioned the Court to redetermine respondent's determination of a $630,159 deficiency in its 2002 Federal income tax. We decide whether section 56(d)(1)(A)(i)(II) precludes petitioner from deducting an alternative tax net operating loss (ATNOL) that offsets all of petitioner's alternative minimum taxable income (AMTI).[1] Our

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code of 1986. Rule references are to the Tax Court Rules of Practice and Procedure.

decision turns on whether petitioner's carryback of an ATNOL from 2004 is a "carryover" within the meaning of section 56(d)(1)(A)(ii)(I). We agree with respondent that the carryback is not such a "carryover" and that petitioner's ATNOL deduction (ATNOLD) is limited by section 56(d)(1)(A)(i)(II).

## *Background*

This case was submitted to the Court fully stipulated under Rule 122. Our recitations of fact are based upon the parties' stipulations of fact and the exhibits submitted therewith. We incorporate those stipulations herein by this reference. Petitioner is an Oregon corporation, and its principal place of business was in Oregon when its petition was filed.

Petitioner's AMTI for 2002 (2002 AMTI), as determined without regard to the ATNOLD, is $37,540,893. For 2003 petitioner incurred an ATNOL of $37,670,950 (2003 ATNOL). Petitioner deducted $15,066,158 of the 2003 ATNOL as a carryback to 2001 and deducted the remaining $22,604,792 as a carryback to 2002. Petitioner also deducted for 2002 $603,295 of ATNOLs carried over from taxable years before 2001.

Petitioner's 2002 AMTI was $14,332,806 after petitioner deducted the $603,295 in carryovers and the $22,604,792 carryback ($37,540,893 − $603,295 − $22,604,792 = $14,332,806). For 2004, petitioner incurred an ATNOL of $29,427,241 (2004 ATNOL). Petitioner then claimed a $14,332,806 deduction for 2002 on account of a carryback of a like amount of the 2004 ATNOL, resulting in an ATNOLD for 2002 that offset all of petitioner's AMTI for that year. Respondent, in the notice of deficiency, determined for 2002 that the 90-percent limitation of section 56(d)(1)(A)(i)(II) applied to petitioner's ATNOLD and reduced the amount of the carryback from 2004 to $11,182,013 (a reduction of $3,150,793). The $3,150,793 reduction, in turn, created the deficiency in petitioner's tax (specifically, its alternative minimum tax (AMT)) for 2002. See sec. 55(b)(1)(B) (imposing a tax rate of 20 percent, which when applied to the $3,150,793 increase in petitioner's 2002 AMTI results in the $630,159 deficiency at issue).

*Discussion*

### I. *AMT*

Section 55(a) imposes an AMT for a taxable year where the tentative minimum tax exceeds the regular tax. See also *Allen v. Commissioner*, 118 T.C. 1, 5 (2002). A corporate taxpayer's tentative minimum tax is "(i) 20 percent of so much of the alternative minimum taxable income for the taxable year as exceeds the exemption amount, reduced by (ii) the alternative minimum tax foreign tax credit for the taxable year." Sec. 55(b)(1)(B). A corporate taxpayer's AMTI equals its taxable income as adjusted for certain items. See sec. 55(b)(2). One of those items, specified in section 56(a)(4), allows a corporate taxpayer to claim an ATNOLD in lieu of a net operating loss (NOL) deduction allowed under section 172.

### II. *Section 56(d)(1)*

Section 56(d)(1) defines the term "alternative tax net operating loss deduction" for purposes of section 56(a)(4). As enacted by the Tax Reform Act of 1986, Pub. L. 99–514, sec. 701(a), 100 Stat. 2320, section 56(d)(1) provided in relevant part:

> SEC. 56(d). ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.—
>
>    (1) IN GENERAL.—For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that—
>
>       (A) the amount of such deduction shall not exceed 90 percent of alternate minimum taxable income determined without regard to such deduction * * *

This version of section 56(d)(1) was later amended three times to arrive at the version applicable here.

First, the Omnibus Budget Reconciliation Act of 1990 (1990 Act), Pub. L. 101–508, sec. 11531(b)(1), 104 Stat. 1388–490, amended section 56(d)(1)(A) to conform to the 1990 Act's enactment of section 56(h) (providing an adjustment relating to "Energy Preferences"). Following this amendment, which was effective for taxable years beginning after December 31, 1990, see 1990 Act sec. 11531(c), 104 Stat. 1388–490, section 56(d)(1) provided in relevant part:

SEC. 56(d). ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that—

(A) the amount of such deduction shall not exceed the excess (if any) of—

(i) 90 percent of alternative minimum taxable income determined without regard to such deduction and the deduction under subsection (h), over

(ii) the deduction under subsection (h), * * *

Second, the Job Creation and Worker Assistance Act of 2002 (2002 Act), Pub. L. 107–147, sec. 102(c)(1), 116 Stat. 26, amended section 56(d)(1)(A) to let "carrybacks" of ATNOLs from 2001 and 2002 offset AMTI of previous years without regard to the 90-percent limitation. The 2002 Act also amended section 56(d)(1)(A) to let "carryforwards" of ATNOLs from years before 2001 offset AMTI for 2001 and 2002 without regard to the 90-percent limitation. See *id.* The amendments in the 2002 Act affected taxable years ending before January 1, 2003. See *id.* sec. 102(c)(2), 116 Stat. 26. Following those amendments, section 56(d)(1) provided in pertinent part as follows:

SEC. 56(d). ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that—

(A) the amount of such deduction shall not exceed the sum of—

(i) the lesser of—

(I) the amount of such deduction attributable to net operating losses (other than the deduction attributable to carryovers described in clause (ii)(I)), or

(II) 90 percent of alternative minimum taxable income determined without regard to such deduction, plus

(ii) the lesser of—

(I) *the amount of such deduction attributable to the sum of carrybacks of net operating losses for taxable years ending during 2001 or 2002 and carryforwards of net operating losses to taxable years ending during 2001 and 2002* * * * [Emphasis added.]

Third, in "Title IV—Tax Technical Corrections", the Working Families Tax Relief Act of 2004 (2004 Act), Pub. L. 108–311, sec. 403(b)(4), 118 Stat. 1187, specified "clerical changes" to the NOL and ATNOL provisions set forth in 2002

Act section 102. H. Conf. Rept. 108–696, at 90 (2004). The 2004 Act replaced the word "carryforwards" in section 56(d)(1)(A)(ii)(I) with the word "carryovers", amended section 56(d)(1)(A)(ii)(I) by substituting "from taxable years" in place of "for taxable years", and amended section 56(d)(1)(A)(i)(I) to strike "attributable to carryovers". See 2004 Act sec. 403(b)(4). The 2004 Act also amended the effective date provision set forth in 2002 Act sec. 102(c)(2), by substituting "after December 31, 1990" for "before January 1, 2003". *Id.* sec. 403(b)(3). The amendments in the 2004 Act were effective as if they had been included in the 2002 Act. See *id.* sec. 403(f), 118 Stat. 1188. Following these amendments, section 56(d)(1) provides in pertinent part as follows:

SEC. 56(d). ALTERNATIVE TAX NET OPERATING LOSS DEDUCTION DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a)(4), the term "alternative tax net operating loss deduction" means the net operating loss deduction allowable for the taxable year under section 172, except that—

(A) the amount of such deduction shall not exceed the sum of—

(i) the lesser of—

(I) the amount of such deduction attributable to net operating losses (other than the deduction described in clause (ii)(I)), or

(II) 90 percent of alternative minimum taxable income determined without regard to such deduction, plus

(ii) the lesser of—

(I) *the amount of such deduction attributable to the sum of carrybacks of net operating losses from taxable years ending during 2001 or 2002 and carryovers of net operating losses to taxable years ending during 2001 and 2002* * * * [Emphasis added.[2]]

## III. *Computation of ATNOLD*

We interpret a statute by looking first to its text. See *Williams v. Taylor*, 529 U.S. 420, 431 (2000); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). The plain meaning of the text is generally conclusive if the text is clear and fits the case. See *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990) ("'If the statute is clear and unambiguous "that is the end of the matter * * * [as a court] must give effect to the unambiguously expressed intent of Congress."'" (quoting *K*

---

[2] This version of sec. 56(d)(1) was in effect when the petition was filed. Sec. 56(d)(1)(A)(ii)(I) was later amended by the Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. 111–92, sec. 13(b), 123 Stat. 2993. That amendment is not applicable here because it applies (with an exception not relevant here) to taxable years ending after Dec. 31, 2002. See *id.* sec. 13(e)(2), 123 Stat. 2995.

*Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291–292 (1988))). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Natl. Bank v. Germain*, 503 U.S. 249, 253–254 (1992).

Under the applicable version of section 56(d)(1), as under its predecessors, the starting point in computing an ATNOLD is "the net operating loss deduction allowable for the taxable year under section 172", as adjusted for (as relevant here) the limitation in section 56(d)(1)(A). For purposes of the regular income tax, section 172(a) allows a deduction equal to the sum of the NOL carryovers and carrybacks to the taxable year. Section 172(b)(1)(A) provides generally that an NOL for a taxable year shall be a "carryback" to each of the 2 taxable years preceding the loss year and a "carryover" to each of the 20 taxable years following the loss year. Section 172(a) and (b)(1), by its terms, clearly distinguishes a "carryback" from a "carryover", indicating that the former goes back in time and the latter goes forward.

Petitioner argues that, contrary to the text of section 172(a) and (b)(1), its 2004 ATNOL is a "carryover" to 2002 for purposes of section 56(d)(1)(A)(ii)(I). We disagree. Section 56(d)(1) defines an ATNOLD by cross-reference to an NOL deduction under section 172, and section 56(d)(1) does not set forth any period for a "carryover" or a "carryback" of an ATNOL in determining an ATNOLD. See also *Plumb v. Commissioner*, 97 T.C. 632, 638 (1991) (explaining that there is not a separate period of carryover or of carryback for purposes of the AMT). Because an ATNOLD cannot be determined without reference to and reliance upon the NOL deduction of section 172, our interpretation of "carryover" for purposes of section 56(d)(1)(A)(ii)(I) is guided by the meaning it acquires as a result of the interplay of sections 56(d) and 172, and the definition of "carryover" in section 172 must control the carryover of an ATNOL for purposes of determining an ATNOLD under section 56(d)(1). We conclude that section 56(a)(1) does not allow for a "carryover" of an ATNOL to a prior period because section 172 does not allow for a "carryover" of an NOL to a prior period.

Petitioner seeks a different conclusion by isolating the term "carryover" as it appears in section 56(d)(1)(A)(ii)(I) from the meaning attached to the term by section 172(a) and (b)(1) or, in other words, by taking the term out of context.

Petitioner's approach is mistaken. Interpreting the term "carryover" in the context of the AMT to permit a carryback of a loss, as does petitioner, would create illogic in the application of section 56(d). The period of carryover or of carryback for purposes of the AMT must be derived from section 172(b)(1)(A), which permits a "carryover" of a loss incurred in 2004 to each of the 20 "following" years. Section 172 has no provision, thus neither does section 56(d)(1), that would allow for a "carryover" of a loss from 2004 to 2002. A loss incurred in 2004 may be applied to 2002, for purposes of the AMT, as for purposes of the regular income tax, only by means of a "carryback", see sec. 172(b)(1)(A)(i), and such a carryback, because not from a taxable year ending in 2001 or 2002, is subject to the 90-percent limitation of section 56(d)(1)(A)(i)(II).

Petitioner also argues that the wording change from "carryforward" to "carryover" in the 2004 Act indicates that Congress specifically intended that an ATNOL carried to 2002 from a subsequent year be exempt from the 90-percent limitation. We disagree. The House and Senate conferees described the changes made to section 56(d)(1)(A) by the 2004 Act as "clerical". H. Conf. Rept. 108–696, *supra* at 90. The Staff of the Joint Committee on Taxation did likewise. See Staff of Joint Comm. on Taxation, Description of the "Tax Technical Corrections Act of 2003" (JCX–104–03), at 4 (J. Comm. Print 2003). Moreover, the 2004 Act amendments have a significance opposite to that which petitioner assigns to them. The 2004 Act modified section 56(d)(1)(A) to bring clause (i)(I) into closer alignment with section 172(b)(1)(A). The modifications confirmed that "carryover" in section 56(d)(1)(A)(ii)(I) is to be construed in pari materia with "carryover" in section 172(b)(1)(A)(ii). The change from "carryforward" to "carryover" preserves uniformity of language between sections 56 and 172 (as section 172 uses the term "carryover") and is not a substantive change such as would have the effect petitioner attributes to it.

Petitioner also argues that Congress changed the effective date of section 56(d)(1)(A) from "taxable years ending before January 1, 2003" to "taxable years ending after December 31, 1990" to enable taxpayers to carry back losses to 2001 and 2002 under the 2004 Act. We disagree. As we understand petitioner's argument, it brings to the fore that the effective

date of the amendments made to section 56(d)(1)(A) by the 2002 Act differs from the effective date of the amendments made to that provision by the 2004 Act. Petitioner construes this alteration as support for its position that an ATNOL incurred in 2004 may be offset against AMTI for 2002 without applying the 90-percent limitation. Petitioner's reasoning is tenuous. Although Congress did not specifically explain its reason for the change of effective dates, the effective date of the 2002 amendments (for taxable years ending before January 1, 2003) was not itself an impediment to the offset petitioner seeks. Thus, it cannot be said that the change in effective date came about as a means to facilitate its position.

We note as a final point that the House Committee on Ways and Means proposed a bill that would have allowed an NOL deduction attributable to NOL carrybacks arising in taxable years ending in 2003, 2004, and 2005, as well as NOL carryforwards to these taxable years, to offset 100 percent of the taxpayer's AMTI. See Staff of Joint Comm. on Taxation, Description of the Chairman's Amendment in the Nature of a Substitute to H.R. 2, the "Jobs And Growth Tax Act Of 2003" (JCX–40–03), at 19–20 (J. Comm. Print 2003). This proposal is consistent with petitioner's position. Congress, however, chose not to enact this option. That Congress apparently considered whether to allow such carrybacks and choose not to do so undercuts petitioner's claim.

## IV. *Conclusion*

We hold that petitioner's carryback of the ATNOL from 2004 to 2002 is not a "carryover" within the meaning of section 56(d)(1)(A)(ii)(I) and that section 56(d)(1)(A)(i)(II) precludes petitioner from deducting an ATNOL that offsets all of its AMTI for 2002. We have considered all arguments for a contrary holding and, to the extent not discussed above, find those arguments to be without merit. In the light of the parties' submitting this case to the Court fully stipulated under Rule 122 our holding results in the entry of decision for respondent. Accordingly,

*Decision will be entered for respondent.*