T.C. Memo. 1996-18

UNITED STATES TAX COURT

RALPH LEON HAYS, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26223-93.          Filed January 22, 1996.

Ralph Leon Hays, Jr., pro se.

Mark A. Weiner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a $9,285 deficiency in

petitioner's 1982 income tax and additions to tax in the amounts

of $2,321.25, $464.25, and $903.97 under sections 6651(a),[1]

6653(a)(1)(A), and 6654(a), respectively.  If an addition to tax

---

[1] Section references are to the Internal Revenue Code in
effect for the period under consideration.  Rule references are
to this Court's Rules of Practice and Procedure.

for negligence is found under section 6653(a)(1)(A), petitioner would also be liable under section 6653(a)(1)(B) for 50 percent of the interest payable on the portion of the underpayment attributable to negligence.  The issues to be considered are: (1) Whether this Court has jurisdiction to decide whether petitioner's $31,000 remittance during 1980 may be applied to his 1982 tax obligation; and if we have such jurisdiction, (2) whether the $31,000 may be applied as a payment of tax for the 1982 taxable year.[2]

### FINDINGS OF FACT[3]

Petitioner's legal residence at the time his petition was filed in this case was Thousand Oaks, California.  Petitioner, by means of a check dated April 15, 1980, remitted $31,000 to respondent.  The check bears the notation "1st Est 1980" on the lower left portion designated for a "Memo".  Other than the check, petitioner did not forward a declaration of estimated tax, a return, or correspondence, or submit any other instructions to respondent.  The $31,000 payment was made by petitioner at a time

---

[2] Petitioner conceded that he failed to timely file, that the amount of income determined by respondent is correct, and that the additions to tax are not in error.  Accordingly, to the extent we decide there is a deficiency, the additions apply. Petitioner failed to file a responsive seriatim brief after respondent's opening brief was served and filed.  Petitioner's brief was due Aug. 21, 1995, and has not been received as of the issuance of this opinion.

[3] The facts and exhibits stipulated by the parties are incorporated by this reference.

when he did not expect to incur a $31,000 tax liability for his 1980 taxable year.

Around the time of remitting the $31,000 check, petitioner was in the process of obtaining a divorce and was engaged in an activity for which he was ultimately incarcerated. As of that time, petitioner had filed a 1978 return, yet he had not filed a 1979 return, which was past due. Petitioner also began squandering money on and personally using cocaine. Ultimately, petitioner failed to timely file his 1979, 1980, 1981, and 1982 Federal tax returns. Petitioner's reasons for remitting the $31,000 were that: He possessed extra funds at that time; he was concerned about his divorce; his cocaine use was affecting his judgment; he was engaged in illicit activities; and he knew that, ultimately, he would be liable for some tax. With respect to his cocaine use, petitioner had noticed that it affected his judgment, and he was concerned that, at some point, he would not be capable of meeting his Federal tax obligations.

When petitioner decided, as a precaution, to send respondent the $31,000, he did so without the assistance of an accountant or lawyer. Petitioner, without any specialized knowledge of the tax laws, sent the $31,000 check with the "1st Est 1980" notation because, other than filing a tax return, it was the only method he knew to make an advance Federal income tax remittance. Prior to the time of the $31,000 remittance, petitioner never filed an estimated tax return or made any estimated payment to respondent.

At the time of the $31,000 remittance, petitioner had earned about $20,000 in wages and paid $2,777.29 in withholding tax during 1982. Respondent treated the $31,000 remittance as an estimated payment.

During late 1979 or early 1980, petitioner invested $26,800 in an oil well, which he expected would generate income sometime in the future. As of May 12, 1980, the oil well was found to be "dry", and petitioner received no return on his investment.

Petitioner's 1979 through 1982 Federal income tax returns were untimely filed on December 10, 1993, 10 or more years late. For the year under consideration (1982), petitioner received $36,153.99 in taxable wages for services performed. Petitioner's untimely 1982 return reflected $36,154[4] of gross and adjusted gross income and contained a claim for a $1,000 personal exemption, resulting in a $9,285 tax liability. Petitioner also claimed a credit of $41,071.72 in "estimated tax payments" to be applied toward his 1982 tax liability, which would have resulted in a $31,786.72 overpayment claim for 1982.

The 1979 return filed by petitioner reflected a $9,251 tax liability, $16,545.43 of tax withheld, and a claimed overpayment of $7,294.43. Petitioner's 1980 return reflected $20,757.44 of wage income and a $26,800 claimed loss deduction from investment

---

[4] Respondent in the notice of deficiency and petitioner on his 1982 income tax return rounded off the amount from $36,153.99 to $36,154.

in the oil well.  Accordingly, the 1980 return reflected a net loss and also contained a claim for a credit or overpayment of $41,071.72, composed of $2,777.29 withheld from 1980 wages, $7,294.43 claimed overpayment for 1979, and the $31,000 1980 remittance.  Petitioner's 1981 return reflected $3,300 of income, no tax liability, and overpayment of the same $41,071.72 as claimed for 1980 and 1982.

                              OPINION

     Although the 1982 taxable year is the one before the Court, the principal question we must answer is whether petitioner's $31,000 check remitted to respondent during 1980 was a payment or deposit.  If it was a payment, we are without jurisdiction to apply it to the 1982 taxable year, over which we have jurisdiction.  If, however, it was made as a deposit during 1980, then we have jurisdiction to decide whether it can be applied to the 1982 tax year.

     This Court's jurisdiction is limited to determining the correct amount of a deficiency for the year(s) before the Court. Sec. 6214(a); Murphree v. Commissioner, 87 T.C. 1309, 1311 (1986).  Section 6214(b), in pertinent part, provides:

     The Tax Court in redetermining a deficiency * * * shall
     have no jurisdiction to determine whether or not the
     tax for any other year or calendar quarter has been
     overpaid or underpaid.

We have no jurisdiction to find an overpayment in a year that is not before the Court.[5]  Commissioner v. Gooch Milling & Elevator

_____

[5] Even assuming, arguendo, that we had jurisdiction over overpayments in years not before the Court, if the $31,000
                                        (continued...)

Co., 320 U.S. 418 (1943); <u>Rothensies v. Electric Storage Battery</u> <u>Co.</u>, 329 U.S. 296 (1946).

The standard for determining whether a remittance is a payment or deposit was set forth in <u>Risman v. Commissioner</u>, 100 T.C. 191, 197 (1993), as follows:

> A remittance by a taxpayer to respondent generally will not be regarded as a payment of Federal income tax until the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability. See <u>Rosenman v. United States</u>, 323 U.S. 658, 661-662 (1945); <u>Ewing v. United States</u>, * * * [914 F.2d 499] at 503-504 [(4th Cir. 1990)]; <u>Fortugno v. Commissioner</u>, 353 F.2d 429, 435 (3d Cir. 1965), affg. 41 T.C. 316, 322 (1963); see also <u>Perkins v. Commissioner</u>, 92 T.C. 749, 754-759 (1989). Until such time and absent such intent, a remittance by a taxpayer to respondent generally will be regarded, not as a payment of tax, but merely as a deposit in the nature of a cash bond with respect to a tax liability that is to be determined at a later point in time.

> \*       \*       \*       \*       \*       \*       \*

> A taxpayer's intent to have a remittance treated as a payment or as a mere deposit is generally to be established by all of the relevant facts and circumstances associated with the remittance. <u>Ewing v. United States</u>, <u>supra</u> at 503; <u>Ameel v. United States</u>, 426 F.2d 1270, 1273 (6th Cir. 1970); <u>Dowell v. Commissioner</u>, T.C. Memo. 1980-515, affd. without published opinion (10th Cir., Jan. 19, 1983), vacated on other grounds 465 U.S. 1001 (1984).

---

[5](...continued)
remittance was a payment for 1980 and considered paid as of Apr. 15, 1981, the time limitations of sec. 6511(b)(2) would apply to prohibit the credit of the payment, claim for which was made in 1993, when petitioner filed his income tax returns for 1980, 1981, and 1982. If the $31,000 remittance was a deposit, sec. 6511(b)(2)(A) would be applied from the time the deposit was applied as a payment. In the setting of this case, petitioner contends that the remittance was a deposit, which he directed as a payment by filing his 1980, 1981, and 1982 returns in 1993 seeking to apply the deposit as a payment of any deficiency that may be due.

If we find that petitioner's $31,000 remittance was an estimated tax payment, then, under section 6315, it is considered a payment of income tax for the year of payment. Respondent contends that the $31,000 remittance was an estimated tax payment, and petitioner contends that it was a deposit. The proper characterization of the $31,000 is a question of petitioner's intent and is generally to be established by all the relevant facts and circumstances associated with the remittance.

But for the notation ("1st Est 1980") on petitioner's $31,000 check, the evidence in this case reflects that petitioner did not intend to make a payment (estimated or otherwise) of tax for 1980. At the time of the payment, petitioner had not filed his 1979 return (although it was due). During 1980 petitioner had earned about $20,000 in wages, all of which was subject to withholding, up to that point in 1980 when he sent the $31,000 check. Although petitioner had purchased an oil well investment, he did not know whether it would produce income during 1980, and, only 1 month after the $31,000 payment, the well was declared to be "dry." Ultimately, when petitioner did file his 1980 return in 1993, he claimed a loss for the full investment in the oil well. Accordingly, petitioner's testimony that he did not intend the $31,000 as payment for 1980 taxes and that it was for future tax obligations is supported by documents and other evidence in the record.

The check notation, "1st Est 1980", is a more troublesome aspect of this case. Petitioner contends that he used that terminology because he did not know of any other way to make an

advance deposit to respondent. Prior to the $31,000 remittance, petitioner had not filed an estimated return or made estimated payments of his Federal tax. More significantly, petitioner did not file a declaration of estimated Federal individual income tax pursuant to the requirements of section 6015.[6] A review of the section 6015 requirements in effect at the time of the $31,000 payment reveals that petitioner was not required to file a declaration of estimated tax. At the time he made the $31,000 remittance, the only income earned or that petitioner expected to earn during 1980 was subject to withholding.

Although of less significance, we note that petitioner attempted to make the remittance (deposit) without the aid of a tax professional. Under these circumstances, his explanation of the use of the notation "1st Est 1980" is more plausible. We are also cognizant of the conditions under which petitioner decided to make the remittance. The use of cocaine, the influences of his divorce proceeding, his illegal activities, and his knowledge that he was becoming less rational due to drug use support petitioner's position of a generalized advance tax deposit as opposed to a payment or estimated payment for a specific year. In the same vein, petitioner was already engaged in a pattern of failing to file returns. It would be difficult to find the

---

[6] Sec. 6015 contained the monetary thresholds and the procedural requirements for filing a declaration of estimated income tax by an individual. It was in effect for the taxable year under consideration, but was repealed for the taxable years after calendar year 1984. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 412(a)(1), 98 Stat. 792.

$31,000 remittance to be specifically or exclusively for the 1980 tax year under these circumstances.

Respondent argues that the remittance was treated by the Internal Revenue Service as an estimated tax payment.[7] By analogy, respondent cites Gabelman v. Commissioner, T.C. Memo. 1993-592, on appeal (6th Cir., Mar. 3, 1995), where we decided that remittances submitted with Forms 4868 (Applications for Automatic Extension of Time To File U.S. Individual Income Tax Return) were payments of tax. In that case we pointed out that "Generally, a remittance by a taxpayer to respondent will not be considered a payment 'until the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability'" (emphasis supplied) (quoting Risman v. Commissioner, supra at 197). From all of the facts in that case, including the language on the Form 4868 and the fact that the taxpayer had estimated the tax liability due on the application for an extension of time to file, we held that the remittances were payments. The facts of this case are obviously distinguishable from those of Gabelman v. Commissioner, supra.

Under the subjective standard established by case law, respondent's treatment of the remittance is not conclusive, although it is one of the factors to be considered. The question here is not parallel with situations where an essentially objective standard is employed in attempting to decide whether a

---

[7] Respondent admitted on brief that she was unable to locate any declaration of estimated income tax form accompanying the $31,000 check.

taxpayer made a proper election for tax purposes. In an attempt to make an election, a taxpayer must comply with statutory requirements in order to succeed. See discussion in Miller v. Commissioner, 104 T.C. 330, 338-340 (1995). Instead, we consider here the intent of a payor. More specifically, the payor (petitioner) was attempting to make a deposit because he knew that, ultimately, tax liability would be generated by his drug use, illegal activity, divorce, or other circumstances. Significantly, petitioner had no actual tax liability when he remitted the $31,000. Although petitioner's approach is unartful and reveals a lack of procedural tax expertise, the overwhelming weight of the evidence in this record supports the conclusion that petitioner's $31,000 remittance was a deposit and not a payment of estimated tax, and we so hold.

Having held that the $31,000 was a deposit, we must decide whether petitioner intended to apply it in payment of his 1982 tax. We have jurisdiction to decide whether an overpayment exists for 1982. Conversely, we have no jurisdiction to decide the $7,294.43 overpayment of withholding claimed for 1979 or the $2,777.29 overpayment of withholding claimed for 1980. Sec. 6214(b). We can decide whether the $31,000 deposit was directed for payment of an acknowledged liability for 1982.

Petitioner reported that he earned the income in his 1982 late-filed return, and he conceded, for purposes of trial, that he is liable for the tax deficiency and additions to tax determined by respondent. Petitioner, however, when he untimely filed his 1979, 1980, 1981, and 1982 income tax returns, claimed

the same $41,071.72 as a "credit" for each of the 1980, 1981, and 1982 years.  Looking at those documents collectively, the 1982 return is the only one against which petitioner could have applied the "credit" as a payment of tax.  That is so because the 1980 and 1981 returns filed by petitioner reflect no tax liability.  Accordingly, we find that petitioner intended to apply the $31,000 deposit as a payment for 1982.

We hold that petitioner is entitled to use the $31,000 as a payment of his 1982 tax deficiency.  To the extent that the $31,000 payment (considered made as of the date petitioner filed his 1982 return) exceeds petitioner's 1982 tax deficiency (including additions to tax and interest), he is entitled to an overpayment of his 1982 income tax, which the parties are to compute in their Rule 155 computation(s).

To reflect the foregoing,

Decision will be entered

under Rule 155.