130 T.C. No. 9

UNITED STATES TAX COURT

BRYCE E. AND MICHELLE S. NEMITZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17507-05.                    Filed May 15, 2008.

        <u>Held</u>:  The period of limitations in sec. 6501(h),
I.R.C., applies with respect to the deficiency for each
of Ps' taxable years 1999 and 2000 that is attributable
to the carryback to each of those years of a claimed
net operating loss for alternative minimum tax pur-
poses.

<u>Burns Mossman</u> and <u>Bruce W. Baker</u>, for petitioners.

<u>Lisa K. Hunter</u>, for respondent.

OPINION

CHIECHI, Judge:  Respondent determined deficiencies of $53,942, $1,476,656, and $21,092 in petitioners' Federal income tax (tax) for their taxable years 1999, 2000, and 2001, respectively.

We must decide whether the period of limitations in section 6501(h)[1] applies with respect to the deficiency for each of petitioners' taxable years 1999 and 2000 that is attributable to the carryback to each of those years of a claimed net operating loss for alternative minimum tax purposes.  We hold that it does.

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below.[2]

Petitioners resided in Cedar Rapids, Iowa, at the time they filed the petition in this case.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the parties' stipulation of facts, respondent objected to the admission of one of the exhibits attached to that stipulation.  That exhibit consisted of a memorandum relating to "ISO and AMT Issues" that petitioners claim their accountant used for purposes of computing the tax reported in the amended return that petitioners filed for each of their taxable years 1999, 2000, and 2001.  We sustain respondent's objections on the grounds of relevance, see Fed. R. Evid. 401, and hearsay, see Fed. R. Evid. 801(c).

During 1997 through 2001, McLeodUSA, Incorporated (McLeod), employed petitioner Bryce E. Nemitz (Mr. Nemitz) as its vice president of investor relations and corporate communications. During Mr. Nemitz's employment, McLeod granted certain options to him to purchase shares of its common stock. All of those options qualified as incentive stock options (ISOs).

During each of the years 1997, 1998, and 2000, Mr. Nemitz exercised at least certain of the ISOs that McLeod granted to him (McLeod ISOs). For each of those taxable years, petitioners were required to include as part of their alternative minimum taxable income the spread between the exercise price of each McLeod ISO that Mr. Nemitz exercised and the date-of-exercise fair market value of the McLeod stock that he acquired.

During 2001, Mr. Nemitz sold certain of the McLeod stock that he acquired during each of the years 1997, 1998, and 2000 through the exercise of certain McLeod ISOs. The proceeds that Mr. Nemitz received from each of those sales were less than the date-of-exercise fair market value of the McLeod stock sold.

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return (return), for each of their taxable years 1999 (1999 return), 2000 (2000 return), and 2001 (2001 return). Petitioners included Form 6251, Alternative Minimum Tax - Individuals (Form 6251), as part of the 1999 return (1999 Form 6251), the 2000 return (2000 Form 6251), and the 2001 return (2001 Form 6251).

Petitioners also included Form 8801, Credit For Prior Year Minimum Tax - Individuals, Estates, and Trusts (Form 8801), as part of the 1999 return (1999 Form 8801), the 2000 return (2000 Form 8801), and the 2001 return (2001 Form 8801).

In the 1999 return, petitioners reported on page 2 taxable income of $1,748,707 and tax of $354,228. In the 1999 Form 6251, petitioners reported alternative minimum taxable income of $1,279,154,[3] tentative alternative minimum tax (tentative AMT) of $262,619, and no alternative minimum tax (AMT). In the 1999 Form 8801, petitioners claimed an AMT credit of $91,609 and an AMT credit carryforward to 2000 of $53,942. On page 2 of the 1999 return, petitioners reduced the tax of $354,228 that they re-ported on that page by the AMT credit of $91,609 that they claimed in the 1999 Form 8801 and reported total tax of $262,619.

In the 2000 return, petitioners reported on page 2 no taxable income and no tax. In the 2000 Form 6251, petitioners reported alternative minimum taxable income of $9,283,465,[4] tentative AMT of $2,595,870, and AMT of $2,595,870. In the 2000 Form 8801, petitioners claimed an AMT credit carryforward to 2001 of $53,023. On page 2 of the 2000 return, petitioners reported

---

[3]In calculating alternative minimum taxable income reported in the 1999 Form 6251, petitioners claimed no alternative tax net operating loss deduction.

[4]In calculating alternative minimum taxable income reported in the 2000 Form 6251, petitioners claimed no alternative tax net operating loss deduction.

AMT of $2,595,870 that they reported in the 2000 Form 6251 and total tax of $2,595,870.

In the 2001 return, petitioners reported on page 2 taxable income of $2,188,651[5] and tax of $433,210.  In the 2001 Form 6251, petitioners reported alternative minimum taxable income of $130,122,[6] tentative AMT of $21,092, and no AMT.  In calculating in the 2001 Form 6251 that they had alternative minimum taxable income of $130,122, petitioners claimed an adjusted loss of $2,563,879.[7]  In the 2001 Form 8801, petitioners claimed an AMT credit of $412,118 and an AMT credit carryforward to 2002 of $2,220,436.  On page 2 of the 2001 return, petitioners reduced the tax of $433,210 that they reported on that page by the AMT credit of $412,118 that they claimed in the 2001 Form 8801 and reported total tax of $21,092.

---

[5]In calculating taxable income reported on page 2 of the 2001 return, petitioners included capital gain of $2,560,879 that they reported on page 1 of that return.

[6]In calculating alternative minimum taxable income reported in the 2001 Form 6251, petitioners claimed no alternative tax net operating loss deduction.

[7]In the 2001 Form 6251, petitioners limited the adjusted loss to $2,563,879, which is equal to the total of (1) capital gain of $2,560,879 that they reported on page 1 of the 2001 return and (2) $3,000.  See supra note 5.  In calculating alternative minimum taxable income reported in the 2001 Form 6251, petitioners included no "excess of AMT income over regular tax income" with respect to incentive stock options.

On November 3, 2002, pursuant to Revenue Procedure 2002-40, 2002-1 C.B. 1096,[8] petitioners filed Form 1040X, Amended U.S. Individual Income Tax Return (amended return), with respect to each of their taxable years 1999 (1999 amended return), 2000 (2000 amended return), and 2001 (2001 amended return).[9] Petitioners included Form 6251 as part of the 1999 amended return (1999 amended Form 6251), the 2000 amended return (2000 amended Form 6251), and the 2001 amended return (2001 amended Form 6251). Petitioners also included Form 8801 as part of the 1999 amended return (1999 amended Form 8801), the 2000 amended return (2000 amended Form 8801), and the 2001 amended return (2001 amended Form 8801). Petitioners included Schedule A-NOL of Form 1045, Application for Tentative Refund, as part of the 2001 amended return (2001 Schedule A).

In the 2001 amended return, petitioners claimed a refund of $21,092 (claimed 2001 refund). In that amended return, petitioners showed in pertinent part:

----

[8]Secs. 6.01 and 7 of Rev. Proc. 2002-40, 2002-1 C.B. 1096, 1098, provide procedures that certain taxpayers who incurred net operating losses during 2001 or 2002 must follow on or before Oct. 31, 2002, in order to elect to forgo the five-year carryback period in sec. 172(b)(1)(H).

[9]Petitioners attached copies of certain pages of (1) the 1999 return to the 1999 amended return, (2) the 2000 return to the 2000 amended return, and (3) the 2001 return to the 2001 amended return.

|  | A. Original amount or as previously adjusted * * * | B. Net change - amount of increase or (decrease) * * * | C. Correct amount |
|---|---|---|---|
| Income and Deductions * * * |  |  |  |
| 1    Adjusted gross income * * * | 2,729,959. |  | 2,729,959. |
| 2    Itemized deductions or standard deduction * * * | 541,308. |  | 541,308. |
| 3    Subtract line 2 from line 1 * * * | 2,188,651. |  | 2,188,651. |
| 4    Exemptions. * * * |  | NONE | NONE |
| 5    Taxable income. Subtract line 4 from line 3 * * * | 2,188,651. |  | 2,188,651. |
| 6    Tax * * * | 433,210. |  | 433,210. |
| 7    Credits * * * | 412,118. | [1]21,092. | 433,210. |
| 8    Subtract line 7 from line 6. Enter the result but not less than zero * * * | 21,092. | -21,092. | NONE |
| 9    Other taxes * * * |  |  |  |
| 10   Total tax.  Add lines 8 and 9 * * * | [2]21,092. | -21,092. | NONE |

[1]The amount of "**Net change**" in credits that petitioners claimed in the 2001 amended return is equal to the difference between the amount of AMT credit that they claimed in the 2001 Form 8801 and the amount of AMT credit that they claimed in the 2001 amended Form 8801.  See infra note 11.

[2]An unidentified person drew by hand a line through the total tax of $21,092 shown in the 2001 amended return as the total tax reported in the 2001 return and handwrote "20,492".  Although the record does not explain those handwritten nota-tions, the record establishes that $21,092 was the amount of total tax reported in the 2001 return and the amount of the refund claimed in the 2001 amended return. However, as discussed infra note 14, the record further establishes, without explanation, that the refund that respondent paid to petitioners with respect to their taxable year 2001 is equal to the total of (1) $20,492 of the claimed 2001 refund of $21,092 and (2) $956.34 of interest.

In arriving at the correct amount of total tax reported in the 2001 amended return, petitioners reported alternative minimum taxable income of negative $6,552,925, no tentative AMT, and no AMT in the 2001 amended Form 6251.  In calculating in the 2001 amended Form 6251 that they had alternative minimum taxable income of negative $6,552,925, petitioners claimed (1) $71,304 as an adjusted loss and (2) negative $9,175,622 as "excess of AMT

income over regular tax income" with respect to incentive stock options.[10]  In the 2001 amended Form 8801, petitioners claimed an AMT credit of $433,210[11] and an AMT credit carryforward to 2002 of $669,665.  In the 2001 Schedule A, petitioners claimed a net operating loss for AMT purposes of $6,552,925.

Petitioners included with the 2001 amended return the following explanation of changes to income, deductions, and credits:

> The taxpayers are amending this return to correct the lines 9 and 10 of Form 6251 (Alternative Minimum Tax - Individuals).  In prior years, Bryce Nemitz exercised numerous incentive stock options and reported the difference between the exercise price and the fair market value on the date of exercise as a tax prefer-ence on Form 6251 on the line labeled "Incentive stock options.  Enter excess of AMT income over regular tax income".  In 2001, the shares acquired by the option exercises were sold at a price below the fair market value on the date of exercise.  On their original return, the taxpayers reported this difference between the amount of income previously reported on Form 6251 and the income reported for regular tax for 2001 on Form 6251, line 9 "Adjusted gain or loss.  Enter dif-ference between AMT and regular tax gain or loss".  This negative adjustment was limited to the amount of capital gain reported for regular tax plus $3,000.  This original reporting is consistent with the IRS instructions to Form 6251.

---

[10]See supra note 7.  In the 2001 amended Form 6251, peti-tioners did not limit the negative $9,175,622 that they claimed as "excess of AMT income over regular tax income" with respect to incentive stock options to the total of (1) capital gain of $2,560,879 that they reported on page 1 of the 2001 return and (2) $3,000.

[11]The amount of AMT credit that petitioners claimed in the 2001 amended Form 8801 exceeds the amount of AMT credit that they claimed in the 2001 Form 8801 by $21,092.

On this amended return, the taxpayers are reporting the negative adjustment described above on Form 6251, line 10, and are not limiting the adjustment as a capital loss for alternative minimum tax purposes.  Taxpayers believe this negative adjustment creates an alternative minimum tax net operating loss that can be carried back to prior years to offset alternative minimum taxable income.

The taxpayers' basis for this change is the United States Supreme Court decision in the case of F. Donald Arrowsmith 42 AFTR 649: aff'g CA-2.  The Supreme Court in Arrowsmith held for the IRS that when a taxpayer had a capital gain on an initial transaction, a subsequent loss on a related transaction had to be capital also. Arrowsmith should apply for alternative minimum tax purposes as well.  In this situation, the original transaction (exercise of the incentive stock options) was ordinary income for alternative minimum tax: therefore the subsequent sale at a loss should also be treated as an ordinary loss.

Petitioners also attached a supplement to the 2001 amended

return in which they stated:

ELECTION TO WAIVE THE 5 YEAR OPERATING LOSS CARRYBACK AND SUBSTITUTE A 2 YEAR CARRYBACK PERIOD.

THE ABOVE-NAME TAXPAYER INCURRED A NET OPERATING LOSS IN THE TAXABLE YEAR ENDING DECEMBER 31, 2001, AND IS ENTITLED TO A FIVE YEAR PERIOD WITH RESPECT TO THAT LOSS UNDER CODE SECTION 172(B)(I)(H) OF THE INTERNAL REVENUE CODE.

PURSUANT TO CODE SECTION 172(J) THE TAXPAYER ELECTS TO WAIVE THE PROVISIONS WITH CODE SECTION 172(B)(1)(H) (A 5 YEAR OPERATING LOSS CARRYBACK) AND INSTEAD APPLY THE PROVISIONS OF SECTION 172(B)(1)(A)(I) (A 2 YEAR OPERAT-ING LOSS CARRYBACK).[12]  [Reproduced literally.]

---

[12]See supra note 8.

On February 3, 2003, respondent paid to petitioners a refund of $21,448.34[13] with respect to their taxable year 2001 (2001 refund).[14]

In the 1999 amended return, petitioners claimed a refund of $53,942. In that amended return, petitioners showed in pertinent part:

---

[13]The parties stipulated that on Feb. 3, 2003, respondent paid to petitioners a refund of $21,488.34 with respect to their taxable year 2001. That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that on Feb. 3, 2003, respondent paid to petitioners a refund of $21,448.34 with respect to their taxable year 2001.

[14]The amount of the 2001 refund is equal to the total of (1) $20,492 of the claimed 2001 refund of $21,092 and (2) $956.34 of interest. The record does not explain why respondent did not refund the entire amount of the $21,092 that petitioners claimed in the 2001 amended return. See table note 2, supra p. 7.

|  | A. Original amount or as previously adjusted * * * | B. Net change - amount of increase or (decrease) * * * | C. Correct amount |
|---|---|---|---|
| **Income and Deductions * * *** |  |  |  |
| 1   Adjusted gross income * * * | 1,778,670. |  | 1,778,670. |
| 2   Itemized deductions or standard deduction * * * | 29,963. |  | 29,963. |
| 3   Subtract line 2 from line 1 * * * | 1,748,707. |  | 1,748,707. |
| 4   Exemptions. * * * | NONE | NONE | NONE |
| 5   Taxable income. Subtract line 4 from line 3 * * * | 1,748,707. |  | 1,748,707. |
| 6   Tax * * * | 354,228. |  | 354,228. |
| 7   Credits * * * | 91,609. | [1]53,942. | 145,551. |
| 8   Subtract line 7 from line 6. Enter the result but not less than zero * * * | 262,619. | -53,942. | 208,677. |
| 9   Other taxes * * * |  | NONE | NONE |
| 10  Total tax. Add lines 8 and 9 * * * | 262,619. | -53,942. | 208,677. |

[1]The amount of **"Net change"** in credits that petitioners claimed in the 1999 amended return is equal to the difference between the amount of AMT credit that they claimed in the 1999 Form 8801 and the amount of AMT credit that they claimed in the 1999 amended Form 8801.  See infra note 16.

In arriving at the correct amount of total tax reported in the 1999 amended return, petitioners reported no alternative minimum taxable income, no tentative AMT, and no AMT in the 1999 amended Form 6251.  In calculating in the 1999 amended Form 6251 that they had no alternative minimum taxable income, petitioners carried back the net operating loss for AMT purposes of $6,552,925 that they claimed in the 2001 amended return and claimed an alternative tax net operating  loss deduction of

$1,279,154.[15]  In the 1999 amended Form 8801, petitioners claimed

an AMT credit of $145,551[16] and no AMT credit carryforward to

2000.

On December 9, 2002, respondent paid to petitioners a refund

of $53,942 with respect to their taxable year 1999 (1999 refund).

In the 2000 amended return, petitioners claimed a refund of

$1,476,656.  In that amended return, petitioners showed in

pertinent part:

---

[15]See _supra_ note 3.

[16]The amount of AMT credit that petitioners claimed in the
1999 amended Form 8801 exceeds the amount of AMT credit that they
claimed in the 1999 Form 8801 by $53,942.

|  | A. Original amount or as previously adjusted * * * | B. Net change - amount of increase or (decrease) * * * | C. Correct amount |
|---|---|---|---|
| Income and Deductions * * * | | | |
| 1 Adjusted gross income * * * | 193,273. | | 193,273. |
| 2 Itemized deductions or standard deduction * * * | 250,333. | | 250.333. |
| 3 Subtract line 2 from line 1 * * * | -57,060. | | -57,060. |
| 4 Exemptions. * * * | 11,200. | | 11,200. |
| 5 Taxable income. Subtract line 4 from line 3 * * * | -68,260. | | -68,260. |
| 6 Tax * * * | 2,595,870. | [1]-1,476,656. | 1,119,214. |
| 7 Credits * * * | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero * * * | 2,595,870. | -1,476,656. | 1,119,214. |
| 9 Other taxes * * * | | | |
| 10 Total tax. Add lines 8 and 9 * * * | 2,595,870. | -1,476,656. | 1,119,214. |

[1]The amount of **"Net change"** in tax that petitioners claimed in the 2000 amended return is equal to the difference between the amount of AMT that they reported in the 2000 Form 6251 and the amount of AMT that they reported in the 2000 amended Form 6251.  See infra note 17.

In arriving at the correct amount of total tax reported in the 2000 amended return, petitioners reported alternative minimum taxable income of $4,009,694, tentative AMT of $1,119,214, and AMT of $1,119,214[17] in the 2000 amended Form 6251.  In calculating in the 2000 amended Form 6251 that they had alternative minimum taxable income of $4,009,694, petitioners carried back the net operating loss for AMT purposes of $6,552,925 that they

[17]The amount of AMT that petitioners reported in the 2000 Form 6251 exceeds the amount of AMT that they reported in the 2000 amended Form 8801 by $1,476,656.

claimed in the 2001 amended return and claimed an alternative tax net operating loss deduction of $5,273,771.[18]  Petitioners claimed no AMT credit carryforward to 2001 in the 2000 amended Form 8801.

On March 4, 2003, respondent paid to petitioners a refund of $1,476,656 with respect to their taxable year 2000 (2000 refund).

Pursuant to section 6501(c)(4), on November 1 and 5, 2004, respectively, petitioners and respondent executed Form 872, Consent to Extend the Time to Assess Tax, in which they consented to extend the time within which to assess petitioners' tax for their taxable year 2001 to September 30, 2005.

On June 27, 2005, respondent issued to petitioners a notice of deficiency (notice) with respect to their taxable years 1999, 2000, and 2001.  In the notice, respondent determined that

> Losses realized on the sale of stock acquired through exercise of an incentive stock option are subject to the limitations applicable to capital transactions. Consequently, such sale does not give rise to an ad-justment in determining Alternative Minimum Tax taxable income.  Accordingly, the Alternative Minimum Tax net operating loss claimed for 2001 has not been allowed.

In the notice, respondent also determined that, because of the disallowance of the claimed net operating loss for AMT purposes for their taxable year 2001, petitioners are not entitled to carry back any portion of that claimed net operating loss to each of their taxable years 1999 and 2000.  The amount of the defi-

---

[18]See _supra_ note 4.

ciency that respondent determined in the notice for petitioners'
taxable year 1999 is equal to the amount of the 1999 refund.  The
amount of the deficiency that respondent determined in the notice
for petitioners' taxable year 2000 is equal to the amount of the
2000 refund.  The amount of the deficiency that respondent
determined in the notice for petitioners' taxable year 2001 is
equal to the amount of the claimed 2001 refund (i.e., $21,092).[19]

That the parties submitted this case fully stipulated under
Rule 122 does not affect who has the burden of proof or the
effect of a failure of proof.  Rule 122(b); Borchers v. Commis-
sioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).
Although petitioners bear the burden of proof in this case, Rule
142(a), resolution of the issue presented here does not depend on
who has the burden of proof.

Petitioners agree (1) that respondent correctly determined
that the losses that they realized during 2001 with respect to
Mr. Nemitz's sale of certain McLeod stock are capital losses and
(2) that for AMT purposes they, as noncorporate taxpayers, may
not carry back to each of their taxable years 1999 and 2000 the
net capital loss that they agree they have for 2001, see sec.
1212(b); Merlo v. Commissioner, 126 T.C. 205 (2006), affd. 492
F.3d 618 (5th Cir. 2007).  Petitioners also agree that, because
of the foregoing uncontested determinations of respondent,

---

[19]See supra note 14.

respondent correctly determined the deficiency with respect to each of petitioners' taxable years 1999, 2000, and 2001.[20] In addition, petitioners concede that the period of limitations for the assessment of the deficiency that respondent determined for petitioners' taxable year 2001 has not expired.

The only dispute between the parties relates to the applicable period of limitations with respect to each of petitioners' taxable years 1999 and 2000. We must determine whether, as respondent argues, the period of limitations in section 6501(h) applies or whether, as petitioners argue, the period of limitations in section 6501(a) applies.[21]

Statutes of limitations that bar the rights of the Government are to be strictly construed in favor of the Government. Badaracco v. Commissioner, 464 U.S. 386, 391 (1984); E.I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924); see also Bufferd v. Commissioner, 506 U.S. 523, 527 n.6 (1993).

Section 6501(h) on which respondent relies provides in pertinent part:

---

[20]See supra note 14.

[21]Respondent does not dispute that if sec. 6501(a) applies with respect to each of petitioners' taxable years 1999 and 2000, the period of limitations for the assessment of the deficiency that respondent determined for each of those years has expired. Petitioners do not dispute that if sec. 6501(h) applies with respect to each of petitioners' taxable years 1999 and 2000, the period of limitations for the assessment of the deficiency that respondent determined for each of those years has not expired.

In the case of a deficiency attributable to the appli-
cation to the taxpayer of a net operating loss
carryback * * * such deficiency may be assessed at any
time before the expiration of the period within which a
deficiency for the taxable year of the net operating
loss * * * which results in such carryback may be
assessed.

Section 6501(a) on which petitioners rely provides in

pertinent part:  "Except as otherwise provided in this section,

the amount of any tax imposed * * * shall be assessed within

3 years after the return was filed".  In support of their posi-

tion that the period of limitations in section 6501(a), and not

the period of limitations in section 6501(h), applies, petition-

ers advance two principal arguments.

We first address petitioners' argument that

Under section 6501(h) the only situations where the
statute of limitations is kept open by reference to a
loss year for noncorporate taxpayers is in the case of
deficiencies attributable to a net operating loss
carryback since such taxpayers cannot have a capital
loss carryback.

    *        *        *        *        *        *        *

* * * for 2001 there was no AMT net operating loss.
Rather there was an AMT capital loss for 2001, which
could not be carried back * * *.  Section 6501(h) is
therefore expressly not applicable to this factual
situation.

As we understand it, petitioners are arguing that in the

2001 amended return they claimed a capital loss, and not a net

operating loss, for AMT purposes with respect to Mr. Nemitz's

sale during 2001 of certain McLeod stock and that in the 1999

amended return and the 2000 amended return they carried back that

capital loss.

The record belies petitioners' argument. For example, in the explanation of changes to income, deductions, and credits that petitioners included with the 2001 amended return, petitioners stated in pertinent part:

On this amended return, the taxpayers are reporting the negative adjustment described above on Form 6251, line 10, and are not limiting the adjustment as a capital loss for alternative minimum tax purposes. Taxpayers believe this negative adjustment creates an alternative minimum tax net operating loss that can be carried back to prior years to offset alternative minimum taxable income.

The taxpayers' basis for this change is the United States Supreme Court decision in the case of F. Donald Arrowsmith 42 AFTR 649: aff'g CA-2. * * * In this situation, the original transaction (exercise of the incentive stock options) was ordinary income for alternative minimum tax: therefore the subsequent sale at a loss should also be treated as an ordinary loss.

The record establishes, and we have found, that petitioners claimed a net operating loss, and not a capital loss, for AMT purposes in the 2001 amended return and that they carried back that net operating loss for AMT purposes in the 1999 amended return and the 2000 amended return.

We turn now to petitioners' argument that

Section 6501(h) refers only to a "deficiency attributable to the application to the taxpayer of a net operating loss carryback." No mention is made in section 6501(h) of an alternative tax capital loss or an alternative minimum tax loss carryback. While statutes of limitation barring assessment of taxes must be strictly construed in favor of the government, statutes are to be construed so as to give effect to their plain and ordinary meaning and all parts of a statute must be

read together and each part should be given its full effect. * * * To give full effect to the differences between the regular tax and alternative minimum tax, the term "net operating loss carryback" in section 6501(h) should not be considered the same as or the equivalent of "alternative minimum tax carryback" or "alternative capital loss carryback".

As we understand it, petitioners are arguing that, because section 6501(h) refers only to a net operating loss carryback, and not to a net operating loss carryback for AMT purposes, that section does not apply to the deficiency for each of their taxable years 1999 and 2000 that is attributable to the carryback to each of those years of the net operating loss for AMT purposes that they claimed in the 2001 amended return.

Section 6501(h) applies in the case of a deficiency attributable to the application of a net operating loss carryback. The only provision in the Code that allows a net operating loss carryback is section 172(b).[22] That section, which is entitled "Net Operating Loss Carrybacks and Carryovers", allows, inter alia, a taxpayer to carry back a net operating loss. Section

---

[22]In 1986, Congress added sec. 56(a)(4) and (d) to the Code. Tax Reform Act of 1986, Pub. L. 99-514, sec. 701(a), 100 Stat. 2323, 2325-2326. Sec. 56(a)(4) allows a deduction for a net operating loss for AMT purposes. Sec. 56(d) defines the term "alternative tax net operating loss deduction" as the "net operating loss deduction allowable for the taxable year under section 172" with certain adjustments to the amount of that deduction allowable under sec. 172 that are set forth in sec. 56(d)(1) and (2). Although the adjustments set forth in sec. 56(d)(1) and (2) may affect the amount of the alternative tax net operating loss deduction allowed under sec. 56(a)(4), nothing in sec. 56 allows the carryback of a net operating loss for AMT purposes.

172(b) does not refer to, or distinguish between, a net operating loss for regular tax[23] purposes and a net operating loss for AMT purposes. See <u>Plumb v. Commissioner</u>, 97 T.C. 632, 638 (1991). That section provides rules that apply to both the carryback of a net operating loss for regular tax purposes and the carryback of a net operating loss for AMT purposes. See <u>id.</u> at 638-639.

Like section 172(b), section 6501(h) does not refer to, or distinguish between, a net operating loss for regular tax purposes and a net operating loss for AMT purposes. If Congress had intended that section 6501(h) not apply with respect to the carryback of a net operating loss for AMT purposes, it would have so stated. It did not.

We hold that the period of limitations in section 6501(h) applies with respect to the deficiency for each of petitioners' taxable years 1999 and 2000 that is attributable to the carryback to each of those years of the net operating loss for AMT purposes that they claimed in the 2001 amended return.[24]

---

[23]The term "regular tax" is defined in sec. 55(c)(1) as the "regular tax liability for the taxable year (as defined in section 26(b))", reduced by certain credits specified in sec. 55(c)(1).

[24]As discussed <u>supra</u> note 21, petitioners do not dispute that if sec. 6501(h) applies with respect to each of petitioners' taxable years 1999 and 2000, the period of limitations for the assessment of the deficiency that respondent determined for each of those years has not expired.

We have considered all of petitioners' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of petitioners,

<u>Decision will be entered for respondent</u>.